UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMOTHY K.,[1]

                              Plaintiff,              **DECISION AND ORDER**

v.                                                          1:20-CV-1529-JJM

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

        Plaintiff brings this action pursuant to 42 U.S.C. §405(g) to review the final determination of defendant Commissioner of Social Security that he was not entitled to Social Security Disability ("SSD") benefits. Before the court are the parties' cross-motions for judgment on the pleadings [12, 14]. [2] The parties have consented to my jurisdiction [16]. Having reviewed the parties' submissions [12, 14, 15], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 855-page administrative record is presumed. On January 3, 2018, plaintiff filed an application for SSD benefits, alleging an onset date of June 24,

___

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Unless otherwise noted, page references are to CM/ECF pagination (upper right corner of the page).

2017.  Administrative Record [11] at 17, 173.³  Plaintiff complained of severe depression, anxiety, post-traumatic stress disorder ("PTSD"), and high blood pressure. Id. at 194.⁴  Plaintiff's claim was initially denied. Id. at 77-80.

Administrative Law Judge ("ALJ") Stephen Cordovani conducted a hearing on December 30, 2019. Id. at 17, 34-66.  Plaintiff was represented by an attorney. Id. at 17, 34.  On January 15, 2020, ALJ Cordovani issued a decision denying plaintiff's claim. Id. at 14, 17-29.  In his decision, ALJ Cordovani found that plaintiff had the following severe impairments: chronic obstructive pulmonary disease, PTSD, anxiety, major depressive discovery, and alcohol abuse disorder. Id. at 19.  With respect to the mental impairments, he found that plaintiff had a "mild limitation" with respect to "understanding, remembering, or applying information", as well as "moderate" limitations in the areas of "interacting with others", "concentrating, persisting, or maintaining pace", and "adapting or managing oneself". Id. at 20-21.

ALJ Cordovani then determined that plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels subject to the following non-exertional limitations: he must avoid exposure to various respiratory irritants; he may perform only low stress work involving simple, unskilled work; no supervisory duties; no independent decision-making; no production rate pace; minimal changes in work routine and processes; occasional interaction with supervisors and co-workers, no more than incidental interaction with the general public; no team work; and absences up to one day per month. Id. at 22.  ALJ Cordovani found that, consistent with the vocational expert's hearing testimony,

---

³  Page references to the Administrative Record refer to the page numbers reflected in the Administrative Record itself (bottom right corner of the page).

⁴  Plaintiff appears to have relied solely on the psychological claims, *i.e.*, anxiety, depression, and PTSD, at the hearing. Id. at 37.

plaintiff was unable to perform past relevant work, but that he would be able to adjust to other work that sufficiently exists in the national economy such that a finding of "not disabled" was appropriate. Id. at 27-29.

In reaching his determination, ALJ Cordovani considered the plaintiff's hearing testimony, his previous self-reports of daily activities, his "routine" mental health treatment history, and the medical opinions of examiners Sandra Jensen, PhD., Hongiao Liu, M.D., and Janine Ippolito, PsyD. Id. at 22-27.

Dr. Jensen completed a "Comp and Pen" examination[5] with respect to plaintiff's PTSD and related claims, in which she opined that plaintiff's symptoms "are consistent with a diagnosis of PTSD in the moderate range". Id. at 498. She further noted that plaintiff's PTSD caused "periods of depressed mood, anxiety and paranoia" which "causes moderate social and occupational impairment." Id. ALJ Cordovani found Dr. Jensen's opinion "unpersuasive" because her findings were not functionally or vocationally specific, nor supported with further detail. Id. at 26. He nonetheless considered plaintiff's statements to Dr. Jensen regarding his daily activities, *i.e.*, that he avoids large groups of people but performs household and maintenance tasks for friends and would be willing to work a back-of-the-house job at a restaurant, and found them to be consistent with the limitations as itemized in the RFC. Id.

Dr. Liu conducted a consultative physical examination of plaintiff and assessed him with largely normal physical functionality, with the exception of a "mild limitation for fine manipulation" due to a "hand tremor", as well as "mild limitations for prolonged walking,

---

[5]   A "Comp and Pen" or compensation and pension examination is generally performed by physician at the behest of the Department of Veterans Affairs to determine whether a veteran has a military service-related injury resulting in a disability and, if so, the extent of such disability. *See* Hoover v. Wilkie, 2020 WL 108423, *2 (W.D.N.Y. 2020).

bending, kneeling, squatting, stair climbing, and carrying heavy weights." Id. at 547. ALJ Cordovani found Dr. Liu's opinion "not persuasive" with respect to those limitations because there was no other support for the hand tremors or the other physical limitations in the record, the physical findings were otherwise normal, and plaintiff did not allege any such impairments at the hearing. Id. at 27.

Finally, Dr. Ippolito conducted a consultative psychiatric examination of plaintiff, and opined that plaintiff:

> "presents as able to understand, remember, [and] apply simple and complex directions and instructions, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, and demonstrate awareness of normal hazards and take appropriate precautions with no evidence of limitations. He can use reason and judgment to make work-related decision and sustain concentration and perform a task at a consistent pace with mild limitations. He can interact adequately with supervisors, coworkers, and the public; and regulate emotions, control behavior, and maintain well-being with moderate limitations. These limitations are due to his emotional distress and alcohol use."

Id. at 557. ALJ Cordovani found this opinion to be "generally persuasive" because it was supported by detailed examination notes and Dr. Ippolito's "program knowledge", and also because it was consistent with the overall record, including plaintiff's reported activities, "conservative" course of treatment, and "largely normal mental status findings". Id. at 27. ALJ Cordovani nonetheless acknowledged that plaintiff experiences "some" difficulties in concentration, interaction, and adapting, which he incorporated into his RFC determination. Id.

ALJ Cordovani's decision became final upon the Appeals Council's denial of plaintiff's appeal. Id. at 1.

## ANALYSIS

Plaintiff argues that ALJ Cordovani's RFC determination was unsupported by substantial evidence because: (1) he improperly weighed the medical evidence - particularly the opinion of Dr. Jensen, who indicated plaintiff had moderate social and occupational impairments (Plaintiff's Brief [12-1] at 12-19); and (2) he improperly relied on lay opinion and selective reading of the evidence in formulating the specific limitations of the RFC. Id. at 19-25.  For the reasons discussed below, I do not agree.

### A.     Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

### B.     The ALJ's weighing of the medical evidence was not improper.

Plaintiff argues that ALJ Cordovani failed to "properly explain" the medical evidence and was "inconsistent" in his treatment of the medical opinions. Plaintiff's Brief [12-1] at 12.  Specifically, he argues that ALJ Cordovani improperly discounted Dr. Jensen's

assessment of moderate limitations as insufficiently specific and failed to account for the more restrictive elements of her opinion and plaintiff's self-reported limitations, which included needing "mental health" days and feeling overwhelmed, anxious, or paranoid around groups of people. Id. at 12-19.

Under the applicable regulations, the ALJ is tasked with evaluating the persuasiveness of all the medical opinions of record based on the factors of supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a)-(c); see Jacqueline L. v. Commissioner of Social Security, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021).  The ALJ need only explain his consideration of the supportability and consistency factors, which the regulations deem the two most important factors. 20 C.F.R. § 404.1520c(b)(2).  "The new regulations do not require the ALJ to give specific weight to any particular medical opinion; rather, they require that the ALJ articulate how he considered the medical opinions and how persuasive he finds the opinion." Jacqueline L., 515 F. Supp. 3d at 8.

Here, ALJ Cordovani met these requirements.  He found Dr. Jensen's assessment of "moderate social and occupational impairment[s]" to be "not functionally or vocationally specific", and, in any case, not supported with further detail. [11] at 26.  Indeed, an opinion of "moderate" impairments unaccompanied by more specific function assessment is generally considered "not specific enough to be the basis for the ALJ's residual functional capacity decision". Watson v. Berryhill, 2019 WL 5592854, *6 (E.D.N.Y. 2019) (regarding an assessment of "moderate limitations for general activity"); see also Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013); Simmons v. Colvin, 2016 WL 1255725, *14 (E.D.N.Y. 2016).  The lack of specificity or explanation by Dr. Jensen also properly undermines the "supportability" and thus persuasiveness of her opinion. See §404.1520c(c)(1).  With respect to the element of

consistency, ALJ Cordovani considered plaintiff's statements to Dr. Jensen, and found them to be consistent with his overall RFC assessment, but not disability. [11] at 26.

Plaintiff argues that ALJ Cordovani should have resolved any ambiguity in Dr. Jensen's opinion by recontacting her for clarification. [12-1] at 16.  While the regulations suggest that an ALJ "may recontact" a medical source (§404.1520b[b][2][i]), they also state that the ALJ will "consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have". §404.1520b(b)(1).  Thus, "the ALJ's duty to develop the record is not absolute, and, as such, does not arise where the ALJ already possesses sufficient evidence to make an RFC determination". Linda L. v. Commissioner of Social Security, 2021 WL 2269504, *4 (W.D.N.Y. 2021).  There is no suggestion that Dr. Jensen, as a Comp and Pen examiner, had any treatment relationship with plaintiff, and, even if she did, "there is no duty to re-contact a treating physician to obtain a function-by-function analysis of plaintiff's impairments where consultative physicians assess a plaintiff's functional limitations and provide an opinion on them". Elnora C. v. Commissioner of Social Security, 2021 WL 695062, *6 n.7 (W.D.N.Y. 2021); see also Jacob M. v. Commissioner of Social Security, 2022 WL 61007, *5 (W.D.N.Y. 2022).

Here, ALJ Cordovani credited the more specific functional assessments of Dr. Ippolito, finding them to be supported by detailed examination notes, Dr. Ippolito's "program knowledge", as well as being more consistent with the overall record, including plaintiff's reported activities, course of treatment, and mental health findings. [11] at 27.  These are all appropriate factors for the ALJ to consider, and adequately address the required factors of supportability and consistency. See §404.1520c(b)(2), (c)(1)-(5).  It is not error for the ALJ to rely on a consultative examiner's opinion where such opinion was supported by the record.  See,

*e.g.*, Trepanier v. Commissioner of Social Security, 752 Fed. App'x 75, 78 (2d Cir. 2018) (Summary Order) (holding the ALJ's RFC finding was supported by substantial evidence where the ALJ "largely relied on the report of a consultative examiner").

**C.     The ALJ did not improperly rely on lay opinion and selective reading of the evidence in formulating the RFC.**

Plaintiff further argues that ALJ Cordovani improperly relied on his own lay interpretation, and selective reading, of the evidence in constructing the RFC, specifically with respect to the elements of off-task time/absences, social interactions, and stress limitations. Plaintiff's Brief [12-1] at 19-25. Plaintiff told Dr. Jensen that he generally missed one to two days of work per month for mental health issues and was previously allowed to take breaks "to calm down" as needed. [11] at 670. Plaintiff also testified that he "cannot be around . . . a lot of people" and avoided stressful situations by staying home. Id. at 45. Plaintiff argues that the ALJ's RFC determination exceeds those limitations and, in certain respects, is unsupported by medical opinion evidence. [12-1] at 20-24.

To begin with, it is the ALJ, and not any medical source, who is responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2) and §§ 416.946(c), 416.927(d)(2); *see* Curry v. Commissioner of Social Security, 855 Fed. App'x 46, 48 (2d Cir. 2021) (Summary Order) ("[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear"). The Second Circuit has repeatedly stated that the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision", and that an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order); *see also* Tricarico v.

Colvin, 681 F. App'x 98, 101 (2d Cir. 2017) (Summary Order). Rather, "[t]he question is . . . whether the ALJ's conclusion was 'supported by the record as a whole.'" Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (*quoting* Tricarico, 681 Fed. Appx. at 101); *see* Butler v. Commissioner of Social Security, 2017 WL 2834482, *8 (N.D.N.Y. 2017) ("[i]t is well-recognized that the ALJ need not adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence").

Here, ALJ Cordovani found that plaintiff retained the RFC to perform a full range of work at all exertional levels subject to limitations including: performing only low stress work involving simple, unskilled work; no supervisory duties; no independent decision-making; no production rate pace; minimal changes in work routine and processes; occasional interaction with supervisors and co-workers, no more than incidental interaction with the general public; no team work; and absences up to one day per month. [11] at 22. The restrictions appear to account for the limitations assessed by Dr. Ippolito, whose opinion ALJ Cordovani credited, specifically that plaintiff would have mild limitations with respect to "us[ing] reason and judgment to make work-related decisions and sustain concentration and perform a task at a consistent pace"; and would have moderate limitations with respect to "interacting with supervisors, coworkers, and the public; and regulating emotions, control behavior, and maintain well-being". Id. at 557; *see, e.g.*, Herb v. Commissioner of Social Security, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019) ("an RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, may account for the plaintiff's stress-related limitations").

It is true that none of the medical opinions assess any necessary absence or off-task limitations. Thus, ALJ Cordovani's one-day-per-month-absence restriction exceeds the

recommendations of the medical opinions of record. However, it is not *per se* error for an ALJ to incorporate more restrictions into the RFC than deemed necessary by a medical opinion. On the contrary, "[w]here an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." Baker v. Berryhill, 2018 WL 1173782, *2 (W.D.N.Y. 2018); *see also* Catalfamo v. Berryhill, 2019 WL 1128838, *2 (W.D.N.Y. 2019) (rejecting an argument that the ALJ erred by "impos[ing] more restrictions than th[e medical] opinions suggested were necessary"); Glab v. Commissioner of Social Security, 2018 WL 3422062, *3 (W.D.N.Y. 2018) ("[t]he fact that the ALJ's RFC conclusion was more restrictive in some aspects than [a medical] opinion . . . does not establish that the ALJ was relying on his own lay opinion").

This corresponds with the general rule that "[u]ltimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ". Beaman v. Commissioner of Social Security, 2020 WL 473618, *6 (W.D.N.Y. 2020). Plaintiff cannot meet that burden here. There is no medical opinion in the record that posits greater limitations than those set forth in the RFC. Thus, this is not a case where the ALJ rejected or modified medical evidence of greater restriction, in which case his authority to craft a diverging RFC might be more circumscribed. *See*, *e.g.*, Cosnyka v. Colvin, 576 Fed. App'x 43, 46 (2d Cir. 2014) (Summary Order) (finding the ALJ's 10% off-task finding unsupported where the orthopedic examiner reported that plaintiff would need "regular comfort breaks" and where plaintiff testified that he would need breaks of up to 15-20 minutes); Annis v. Commissioner of Social Security, 2019 WL 6875231, *10-11 (W.D.N.Y. 2019) (finding the ALJ's 5% off task determination lacked sufficient support where the only medical opinion providing a specific time limitation stated that plaintiff would be off task at least 30% of the workday).

To the extent plaintiff objects to the ostensible specificity of the ALJ's absentee findings, such findings of modest absentee or off-task findings are merely intended to reflect mild or effectively *de minimis* limitations with deference to plaintiff's subjective complaints. *See* Johnson v. Colvin, 669 Fed. App'x 44, 47 (2d Cir. 2016) (Summary Order).

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings [14] is granted, and plaintiff's motion [12] is denied.

**SO ORDERED**.

Dated: June 8, 2022

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge